IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL INDICTMENT |
| v. | : | |
| | : | NO. 1:09-CR-0490-AJB-TWT |
| THE PUBLIC WAREHOUSING | : | |
| COMPANY, K.S.C., a/k/a Agility; | : | First Superseding |
| AGILITY DGS HOLDINGS, INC., | : | |
| f/k/a Agility Defense & | : | |
| Government Services, Inc., | : | |
| f/k/a PWC Logistics Services, Inc.; | : | |
| AGILITY DGS LOGISTICS SERVICES | : | |
| COMPANY, K.S.C.(c), d/b/a and f/k/a | : | |
| PWC Logistics Services K.S.C.(c); | : | |

Defendants.


<u>UNITED STATES' RESPONSE TO DEFENDANT PWC'S SECOND
MOTION TO QUASH SERVICE OF PROCESS</u>

Now comes the United States, by its attorneys, F. Gentry Shelnutt, Acting

United States Attorney for the Northern District of Georgia with respect to this matter,

Barbara E. Nelan, Assistant United States Attorney, Richard E. Reed, Special

Assistant United States Attorney, and Steven D. Grimberg and Alana R. Black,

Assistant United States Attorneys, and pursuant to this Court's August 8, 2010,

Minute Order, hereby submits this Response to PWC's Second Motion to Quash

Service of Process [Doc. 118].

On or about July 29, 2010, Defendant Public Warehouse Company, a/k/a Agility ("PWC") filed a second Motion to Quash Service. This motion contends that this court should adjudicate its claim of lack of service, and that none of the summons served to date have been effective in terms of bringing PWC before this Court to answer the charges against it.

**Uncontested Facts**

The following facts are undisputed:

A.    <u>The Defendants</u>

Beginning no later than 2006, PWC presented itself to the public and its customers as an "industry powerhouse" with "450 offices worldwide" and "the power of a global network." [Exhibit A, Annual Report 2006, Chairman's Message]   This "global powerhouse" is a consolidation of PWC and its subsidiaries, defined as the "Group." <u>Id</u>. at p.20.   In fact, in recognition of the Group's operation as a whole, the consolidated financial statements eliminate "all intra-group balances, transactions, income and expenses and profits and losses resulting from intra-group transactions." <u>Id</u>.   The PWC subsidiaries that are in the Group are "consolidated from the date of acquisition, being the date on which the Group obtains control, and continues to be consolidated until the date that such control ceases." <u>Id</u>.    The ending page of the Report also provides two addresses in the United States as its "specialized

2

headquarters": Alexandria Virginia and Houston Texas.  Id.

PWC's 2007 Annual Report continues its recognition of the Group's operation as a whole and further specifies that the PWC enterprise, described as being "present in more than 100 countries" and as a "multinational company with a global footprint", is divided into "three interrelated business groups: Integrated Logistics (GIL), Defense and Government Service (DGS), and investments, which are focused around our key customer base." [Exhibit B, 2007 Annual Report, Chairman's Message, p. 8-9]   This Report goes on to describe DGS as a business group that "provides comprehensive logistics solutions to various government entities and non government organizations on a global basis.  We provide this diverse group of customers- including the US Defense Logistics Agency (DLA), US Army, US Navy, US Air Force, Army Air Force Exchange Services (AAFES) and the Department of State- the convenience of seamlessly integrated supply chain solutions, a commitment to integrity, and consistent high-quality performance."  Id. p.11.  The 2007 Report again states that the consolidated Group is comprised of PWC and its subsidiaries based upon PWC having the "power to directly or indirectly govern the financial and operating policies of the [subsidiary] entity so as to obtain benefits from its activities."  Id. Notes to Financial Statement, p.24.

PWC's 2008 and 2009 Annual Reports are consistent with its 2006 and 2007 Reports, recognizing the functioning of the Group, and consolidating its financial statements with the subsidiaries based upon PWC's ability to govern them and obtain benefits from their activity. [see Exhibit AA to Doc 92 and Exhibit C hereto].

The functioning of PWC and its subsidiaries as a unit with entity names merely used interchangeably is also evidenced in the October 2008, proposal to be the Prime Vendor on the next DLA Prime vendor contract. That proposal, submitted by Daniel G. Mongeon, on behalf of PWC Logistics Services Co. K.S.C.(c), identifies itself as the "incumbent Prime vendor."[1] [Exhibit D]. The proposal further explains that the Agility organization integrates "the specialized services across Agility's group of companies and reflects the company's **single face** to the customer." (Emphasis added.) The customer in this instance is the United States Government.

B.   Service

1.  Prior to indictment

Northern District of Georgia civil and criminal subpoenas directed to PWC have previously been served on an employee (Blair Hicks) in Winchester, Virginia and on various counsel of PWC, including outside counsel Whitten Peters and internal

---

[1] PWC Logistics Services Co. K.S.C.(c) is a defendant in the present case. The proposal also states that PWC Logistics Services Co. K.S.C.(c)'s excellent contractor service was recognized by DSCP in 2007, 2004 and 2005.

counsel Sam McCahon.

PWC knew about the then impending indictment at least by October 23, 2009. On that day in an e-mail communication, counsel for the United States asked defendant PWC's counsel to "identify a PWC representative who will accept a summons with respect to an initial appearance/arraignment." On October 30, 2009, PWC's counsel responded in relevant part that: "I spoke with Sam McCahon [PWC internal counsel] regarding the availability of someone to receive a summons on behalf of PWC. He noted that PWC's senior staff travels a great deal and often on short notice so it is it [sic] not always predictable as to who will be where at a particular time. He did note that if you can provide perhaps as little as a week's notice, he should be able to specify someone for your process. If not himself."

2. Post Indictment

The specified summons were delivered in the manner indicated in the table below:

| Date | Summons/indictment | Service |
|------|--------------------|---------| 
| 11/16/2009 | Summons and original indictment | Hand delivery to office of PWC's outside counsel, Richard Deane Jr. |
| 11/16/2009 | Summons and original indictment | CT Corporation in Delaware, the registered agent for DGS Holdings |

| | | |
|---|---|---|
| 11/16/2009 | Summons and original indictment | Hand delivery to the 1725 Duke Street, Alexandria, Virginia office of DGS Holdings, Inc. |
| 02/12/2010 | Summons for all three defendants and First Superseding Indictment | CT Corporation in Delaware, the registered agent for DGS Holdings |
| 02/12/2010 | Summons for all three defendants and First Superseding Indictment | Mail delivery to the 1725 Duke Street, Alexandria, Virginia office of DGS Holdings, Inc. |
| 02/18/2010 | Summons for all three defendants and First Superseding Indictment | Hand delivery to retired General Paul G. Cerjan |
| 02/18/2010 | Summons for all three defendants and First Superseding Indictment | Hand delivery to retired General Daniel G. Mongeon |
| 03/23/2010 | Summons for all three defendants and First Superseding Indictment | Hand delivery to Edward Hoffman at the 1725 Duke Street, Alexandria, Virginia office |
| 07/23/2010 | Summons for PWC and First Superseding Indictment | Hand delivery to PWC counsel Michael Charness |
| 07/29/2010 | Summons for PWC regarding First Superseding Indictment | Sent Federal Express to PWC at 180 Prosperity Drive Suite 1, in Winchester, VA - see Exhibit E |

C. Choice of Law

The PV contracts at issue incorporate by reference 252.233-7001 Choice of

Law provision of the Federal Acquisition Regulation. [Exhibit F]. This Choice of

Law clause provides that the contracts are controlled by United States law.

D.  Persons served

1.  Retired General Daniel G. Mongeon admits that he is the President and Chief Executive Officer of Agility DGS Holdings, Inc. and the Managing Director of Agility DGS Logistics Services Company KSC(s).

2.  Edward Hoffman admits that he is Senior Vice President and General Counsel for Agility DGS Holdings, Inc.

3.  Paul G. Cerjan admits that he is the President of a business unit of Agility DGS Logistics Services Company, KSC(c) and prior member of the Board of Directors of Agility DGS Logistics Services Company, KSC(c).[2]

4. Richard Dean Jr. is outside counsel and prior to indictment was the government's principle point of contact on matters related to PWC.  See Exhibit G.

5.  Michael Charness is outside counsel and has represented PWC in multiple matters over a number of years, including : (a) making a general appearance representing PWC in U.S. District Court, D.C., 1:07:CV-01476-RBW, PWC v. DSCP, etc. filed by PWC on August 16, 2007[3];   (b) represented PWC in an appeal to the Armed Services Board of Contract Appeal (ASBCA) on May 29, 2007, and docketed

---

[2] Mr. Cerjan claims to have resigned from the Board on February 7, 2010.

[3] Mr. Charness also submitted a FOIA request on behalf of PWC via email dated Feb. 12, 2007, and appealed the initial denial to DLA HQ by letter dated May 3, 2007.

as ASBCA Appeal No. 56022;[4] (c) represented PWC in a certified claim for withheld performance-based distribution fees dated April 27, 2009; (d) represented PWC in ASBCA Rebates Appeal, ASBCA No.; (e) represented PWC in a March 2007 challenge to its adverse past performance, first in the US Federal District Court for D.C. (489 F.Supp. 2d 30), and then in the Court of Federal Claims (case 07-366C); (f) represented PWC in a suit filed by PWC in the U.S. District Court for DC (1:08-cv-00464) on March 18, 2008; (g) represented PWC in a bid protest filed by PWC with GAO (B-400660) on October 1, 2008 challenging various provisions of the "PV3" solicitation.

**Argument**

The United States incorporates by reference the arguments previously made [Docs. 92, 93] with regard to the issue of service.

The delivery of process in this case has been extensive. Moreover, PWC's claim that the United States' continued delivery of process "demonstrates the government's lack of confidence in the validity of its previous service attempts" is simply wrong. The United States is confident that it has perfected service. However, as long as PWC continues its attempt to hide in Kuwait and rely on a shell game of entities to argue it has not been served, the United States will continue to deliver

---

[4] Edward Hoffman filed the notice of appeal with the ASBCA (May 29, 2007) and submitted the complaint to the ASBCA (July 9, 2007).

service in every way possible.

Federal Rule of Criminal Procedure 2 provides that "[t]hese rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay."  As stated in the United States prior responses in this case, service on PWC has been perfected, including by service on PWC's controlled  subsidiaries who are the alter ego of PWC.

In addition to these subsidiaries factually being the alter ego of PWC, this Court should consider PWC's representation in the past with regard to these subsidiaries. PWC has repeatedly held itself and its subsidiaries out as a unitary interrelated "Group."  These repeated representations of control, unitary effort and interrelated functioning to form the Group, should estop PWC's position on service which seeks to now disavow such connections.  See Jordan v. Global Natural Resources, Inc., 564 F.Supp. 59, 69 (S.D. Ohio 1983) (defendant estopped from asserting that service at an address it published to its shareholders was insufficient for the purpose of service); Galley Recording Studios, Inc. v. Discrete Technology Ltd., 1997 WL 695569 (S.D.N.Y. 1997).

The United States served Michael Charness in this case, based upon his continued and extensive representation of PWC in virtually every aspect of the underlying contracts.  In fact, Mr. Charness was an active participant in at least one

meeting concerning the criminal investigation with the undersigned present.[5]  PWC

has also been served with legal process prior to the indictment through counsel with

no motion to quash such service.[6]  As stated in its initial notice to the court, the

United States does not know of any case addressing the issue of service on an attorney

in the context of a criminal case and PWC has not cited to any such criminal case.

Further, in contrast to the civil cases cited by PWC, Mr. Charness was not served

based upon his representation of PWC in the present case, but rather has a very

extensive history with PWC in other matters and cases.

Also in contrast to the civil cases cited by PWC, it has accepted service on

multiple occasions through its various counsel and when it knew that this case would

be charged its internal counsel suggested that he may be the one to accept service on

behalf of PWC.   Now that the Grand Jury has indicted, PWC's conduct has changed.

Such a change is further evidence that PWC's principal objective in this case is to

remain a fugitive so that it does not have to answer the allegations in the Superseding

Indictment.

The United States has also mailed a copy of the summons to the last known

---

[5] It is hard to understand PWC's arguement that walking up to Mr. Charness and handing
him a summons was deceptive.  Mr. Charness' office is in Washington, D.C.  If we assume that
as an officer of the court, unlike PWC, he would not duck service, handing him documents
before a court proceeding when it was known where he would be at a given time is a
convenience to all involved.

[6] After indictment, PWC's board declared that one person in the whole world could
accept service and that person is **an attorney**, Ahmed Abdulaziz, who resides in Kuwait.

address of PWC in the United States.   While such a mailing is certainly unnecessary

given Rule 2's directive to interpret the rules to eliminate unjustifiable expense and

delay, the United States undertook this mailing given PWC's position (and that of

Agility DGS Logistics Services Company K.S.C.(c)) that it cannot be served.  PWC

maintains this position even though it closed its principal place of business in the

United States only after receiving a grand jury subpoena in this case.

PWC's underlying position in this case is that, to quote Ahmed Alsayed

Abdulaziz: "effective service on PWC can only be made by personal service on [Mr.

Abdulaziz] in accordance with Kuwaiti law." [Doc.51, Exhibit K].   So while PWC

has entered into multiple contracts with agencies of the United States government

which are controlled by United States law, and has collected and continues to collect

millions of United States dollars, it argues that it can unilaterally dictate the contours

of service by appointing one person and only one person who purportedly can accept

service on its behalf. [7]

---

[7] In its second motion to quash, PWC cannot resist again making the spurious argument that the United States tried to lure Mr. Abdulaziz to the U.S. embassy.   While making this claim, PWC has failed to reply to the United States' request to provide a  phone  number that received this supposed  mysterious phone call so the phone records of the United States Embassy can be reviewed.  While PWC argues that such Embassy phone records could be reviewed, Mr. Abdulaziz has provided no time for the mysterious call and one has to wonder what such a review would look for if the phone number is not provided.  To make the luring phone call story even more absurd,  PWC argues that an Embassy call to Mr. Abdulasis  must have happened or else how would he have "obtained an unlisted internal telephone number for the U.S. Embassy." (Doc. 100, p.19).   This assertion ignores the affidavit of Jamie Tabb submitted by PWC (Doc. 51, Exh L) which notes that rather than being an unlisted internal Embassy number, the number Mr. Abdulaziz claims showed up on his wife's caller ID is actually the number that shows up on

Finally, PWC argues that the United States "continues to refuse to avail itself of the proper diplomatic channels for serving PWC." This argument infers that PWC would answer the charges in this case, if only they were served with process in Kuwait, by Kuwaiti officials. However, as PWC has previously noted, a letter from the Kuwaiti Ambassador to the United States leaves no doubt that the Kuwaiti government objects to the present prosecution. Accordingly, with no extradition treaty between the United States and Kuwait[8], there is little reason to believe the Kuwaiti government would cooperate with service. More importantly, PWC has indicated that even is this Court were to rule that service as perfected, that would not settle all issues with regard to this Court's jurisdiction over it. The more probable assessment of what is going on here is that PWC wants delay- any delay- so that it can stay in Kuwait and empty its coffers without being accountable to the victim of its ware profiteering, the United States.

---

anyone's caller ID that receives a call from anyone at the Embassy.

[8] See generally U.S. Dept. Of State, Treaties in Forse: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2009, at 158 (Kuwait), available at http://ww.state.gov/documents/organization/123746.pdf, referred to as Treaties in Force.

## III. Conclusion

For all of the foregoing reasons, the United States respectfully requests that this Court deny defendant PWC/Agility's Second and Amended motions to Quash Service of Process.

Respectfully submitted,

F. GENTRY SHELNUTT
ACTING UNITED STATES ATTORNEY


/s/BARBARA E. NELAN
Barbara E. Nelan
Assistant U.S. Attorney
Georgia Bar No. 537537

/s/RICHARD E. REED
Richard E. Reed
Special Assistant U.S. Attorney
Georgia Bar No. 597745

/s/ STEVEN D. GRIMBERG
Steven D. Grimberg
Assistant U.S. Attorney
Georgia Bar No. 312144

/s/ ALANA R. BLACK
Alana R. Black
Assistant U.S. Attorney
Georgia Bar No. 785045

75 Spring St., S.W., Suite 600
Atlanta, GA 30303
(404)581-6000; (404)581-6181 (Fax)

<u>CERTIFICATE OF SERVICE</u>

       This is to certify that I have this day served upon the persons listed below a copy of the foregoing document electronically:

       Richard H. Deane, Jr., Esq.
       Anne Moody Johnson, Esq.
       David J. Bailey, Esq.
       Jones Day
       1420 Peachtree Street, NE
       Atlanta, GA 30309-3053

This 19th day of August, 2010.

       /s/ Barbara Nelan
       BARBARA E. NELAN
       ASSISTANT UNITED STATES ATTORNEY